**ALLIED TRUST INSURANCE COMPANY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SPECIAL PROVISIONS – LOUISIANA
### For Use with Form HO 00 03

**DEFINITIONS**

Definition: Sentence **B.1.a**. is deleted and replaced with the following:

   **a.** Liability for "Bodily Injury" or "Property Damage" because of or originating from or in connection with:

Definition **B.1.b.(1)** is deleted and replaced with the following:

   **(1)** Aircraft means any contrivance used or designed for flight, including models or hobby aircraft, drones and personal drones, including model and hobby drones.

Definition **B.8.** is deleted and replaced by the following:

  **8.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the term of this policy or any renewal thereafter, in:
   **a.** "Bodily injury"; or
   **b.** "Property damage".

The following definitions are added:

  **12.** "Actual Cash Value" means the amount it would currently cost to repair or replace covered property with new material of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence.

  **13.** "Bacteria" means any type, kind or form of bacterium.

  **14.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

  **15.** "Named Storm" means: A storm system that has been declared to be a "Hurricane" by the National Hurricane Center of the National Weather Service.  The duration of a "Hurricane" includes the time period in Louisiana:

   **a.** Beginning at the time a "Hurricane" watch or "Hurricane" warning is issued for any part of Louisiana by the National Hurricane Center of the National Weather Service;
   **b.** Continuing for the time period during which the "Hurricane" conditions exist anywhere in Louisiana; and
   **c.** Ending 72 hours following the termination of the last "Hurricane" watch or "Hurricane" warning issued for any part of Louisiana by the National Hurricane Center of the National Weather Service.

  "Named Storm" includes resulting wind, wind gusts, hail, rain, tornadoes, or cyclones which result in direct or indirect physical loss or damage to property.

  **16.** "Hydraulic Fracturing" (also known as hydro-fracturing, hydro-fracking, fracking or fraccing) means a technique used to stimulate production of oil and gas after a well has been drilled.  The process involves high-pressure injection of a mixture of water, sand and chemical additives through a well drilled into an oil-or gas-bearing rock formation.  The process is designed to create small cracks within (and thus fracture) the formation allowing natural gas, petroleum, other hydrocarbons and brine to flow more freely.

  **17.** "Marring" means damage to appearance which is cosmetic in nature, not affecting functionality or use, or both whether such damage occurs over time or is sudden and accidental in nature. Marring includes, but is not limited to, the type of damage one would expect to occur during the life span of any item and/or any building component, pitting, dents, scratches, scrapes, nicks, blemishes, cracks, discoloration, chips, dings, or any combination of these or similar types of damage.

  **18.** "Personal Watercraft" means a watercraft principally designed to be propelled on or in water by any type of engine power or motor and designed to carry one to four persons either standing or sitting.  "Personal Watercraft"

**EXHIBIT E**

includes, but is not limited to jet skis, wave runners, hydrofoils, submersibles of any kind, quad crafts, amphibious crafts and other similar watercraft.

19. "Unoccupied" means the dwelling is not being inhabited as a residence.

20. "Vacant" means the dwelling lacks the necessary amenities, adequate furnishings or utilities and services to permit occupancy of the dwelling as a residence for 60 consecutive days or more.

21. "Fuel System" means:
    1. One or more containers, tanks, or vessels which have a total combined liquid fuel storage capacity of 100 or more U.S. gallons; and
        a. Are, or were, used to hold liquid fuel; and
        b. Are, or were, located on any one location;

    2. Any pumping apparatus, which includes the motor, gauge, nozzle, hose or pipes that are, or were, connected to one or more containers, tanks or vessels described in Paragraph **1.**
    3. Filler pipes and flues connected to one or
    4. more containers, tanks or vessels described in Paragraph **1.**

    5. A boiler, furnace or a water heater, the fuel for which is stored in a container, tank or vessel described in Paragraph **1.**

    6. Fittings and pipes connecting the boiler, furnace or water heater to one or more containers, tanks or vessels described in Paragraph **1.**

    7. A structure that is specifically designed and built to hold escaped or released liquid fuel from one or more containers, tanks or vessels described in Paragraph **1.**

A "fuel system" does not include any fuel tanks that are permanently affixed to a motor vehicle or watercraft owned by an "insured", used for powering the motor vehicle or watercraft and not used at any time or in any manner for "business".

**SECTION I – PROPERTY COVERAGES**

**A. COVERAGE A - DWELLING**
The following paragraph is added to paragraph **1.**
   c. In-ground swimming pools attached to the dwelling, including related permanently installed equipment such as pump and filters.

**B. COVERAGE B – OTHER STRUCTURES**
The following sentence is added to paragraph **1.**
Fences are considered Other Structures whether or not they are connected to the dwelling.

Paragraph **2.c.** is deleted and replaced with the following:
   c. Other structures used in whole or in part for any "business"; or

Paragraph **3.** Is deleted and replaced with the following:
 3. The limit of liability for this coverage will not be more than the limit of liability shown on the Declarations for **Coverage B.** Use of this coverage will not reduce the **Coverage A** limit of liability.

The following paragraph is added:
**COVERAGE A – DWELLING AND COVERAGE B – OTHER STRUCTURES – SPECIAL LIMITS OF LIABILITY**
1. **Cosmetic And Aesthetic Damage To Floors**
   The total limit of liability for Coverage A - Dwelling and Coverage B – Other Structures combined is $10,000 per policy term for cosmetic and aesthetic damages to floors resulting from a covered loss.
   a. Cosmetic or aesthetic damage includes, damage to less than 5% of the total floor surface area and does not prevent typical use of the floor.

   b. This limit includes the cost of tearing out and replacing any part of the building necessary to repair the damaged flooring.

   c. This limit does not increase the Coverage A – Dwelling or Coverage B – Other Structures and Coverage D – Loss of Use limits of liability shown on the declaration page.

   d. This limit does not apply and does not create coverage for damage to floors caused by wear and tear, marring, chipping, scratches, dents, deterioration, dropped objects or loss excluded elsewhere in this Policy.

   e. This limit does not apply to cosmetic or aesthetic damage to floors caused by a Peril Insured Against as named and described for Coverage C – Personal Property.

**ALLIED HO3 SP LA 16.06**          Includes copyrighted material of ISO, with its permission.

2. **Damage To Siding, Roofing And/Or Windows**
    a. In the event of damage to siding, roofing and/or windows of the covered dwelling and other structures at the "insured location", we reimburse you up to 2% of the limit of liability for Coverage A for the cost you incur to replace any undamaged siding, soffit, fascia, roofing material and/or windows of like kind and quality to match those materials that were used to repair or replace the property damaged as a result of a covered peril.

**C. COVERAGE C – PERSONAL PROPERTY**
**2. SPECIAL LIMITS OF LIABILITY**
The following items are added:
   l. $1,000 for loss to art glass windows and other works of art including, but not limited to, statuary (including but not limited to Hummels, marbles, bronzes, porcelains, rare glass and bric-a-brac).

   m. $5,000 for loss to tools. (Does not apply to landscaping or lawn equipment solely used to maintain the insured premises while such equipment is located at the "insured location".)

   n. $1,000 on all collections and/or collectibles including, but not limited to, baseball cards, comic books, album covers, wine, dolls, model trains, memorabilia, or any other private collections or rare, unique or novel items of personal interest. This limit applies regardless of the number of collections or collectibles.

   o. $2,500 on all Fine Arts including, but not limited to painting, etchings, pictures, photographs, tapestries, and any other bona fide works of art of rarity, historical value or artistic merit, such as valuable rugs, marbles, bronzes, antique furniture, rare books, and manuscripts.

   p. $1,000 for bicycles and related equipment.

   q. 10% of the Coverage C Limit for any one item of unscheduled property.

**4. Property Not Covered**
Item **4.c.** is deleted and replaced by the following:
   c. "Motor vehicles" or any other motorized land conveyances.
   This includes a "motor vehicle's" or any other motorized conveyance's equipment and parts. However, this Paragraph **4.c.** does not apply to:

   Item **c.(1)(b)** is deleted and replaced by the following:

   (b) Is designed so that it may be operated from a power source other than a "motor vehicle's" or any other motorized conveyance's electrical system.

Paragraph **d.** is deleted and replaced with the following:
   d. Aircraft, meaning any contrivance used or designed for flight, including any parts whether or not attached to the aircraft.

Paragraph **4.f.** is deleted and replaced with the following:
   f. Property of roomers, boarders and other tenants, and anyone who regularly resides at the "insured location" who is not an "insured".

The following paragraphs are added to **Property Not Covered:**
   l. Your television antenna, satellite dish, satellite antenna or radio towers and their antenna. This exclusion also applies to all related receiving equipment including receiver mounts, transducers or other receiver parts or installation parts. Television Sets are not an excluded item under this exclusion.

   m. Trampolines

**D. COVERAGE D – LOSS OF USE** is deleted in its entirety and replaced with the following:

**D. COVERAGE D – LOSS OF USE**
   The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense and, **2.** Civil Authority Prohibits Use below.

   1. **Additional Living Expense**
      If a loss covered under Section **I** makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

      Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

      In either event, the payment(s) will be limited to (12) consecutive months from the date of the covered loss.

**ALLIED HO3 SP LA 16.06**        Includes copyrighted material of ISO, with its permission.        Page **3** of **14**

2. **Civil Authority Prohibits Use**

   If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense above for no more than two weeks.

3. **Loss Or Expense Not Covered**

   We do not cover loss or expense due to:
   a. cancellation of a lease or agreement; or
   b. Any "insured's" "business" whether located on the "insured location" or any other location.

   The periods of time under **1.** Additional Living Expense and **2.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

E. **ADDITIONAL COVERAGES**

   Paragraph **2.a Reasonable Repairs** is deleted and replaced with the following:
   a. **Reasonable Repairs**

      We will pay the reasonable cost incurred by you for emergency repairs or measures that are necessary to protect covered property from further damage if a Peril Insured Against causes the loss.

3. **Trees, Shrubs And Other Plants**
   The following paragraph is added:
   Trees, shrubs, plants or lawns on the "residence premises" do not include woodland, forestry, wild land, natural vegetation, brush or any other similar vegetation.

**SECTION I – PERILS INSURED AGAINST**

A. **Coverage A – Dwelling and Coverage B – Other Structures**

   Paragraph **1.** is deleted and replaced with the following:
   1. We insure for sudden and accidental direct physical loss to property described in Coverages **A** and **B**.

   Paragraph **2.c.(5)** is deleted in its entirety and replaced with the following:

   (5) Caused by or originating from any constant or repeated seepage or leakage of water or steam or the presence of condensation of humidity, moisture, or vapor, over a period of 14 or more days from within a plumbing, sprinkler system, or from within or around any household appliance, shower stall, shower tub, tub installation or other plumbing fixture, including their walls, ceiling, or floors.

   **Exception to c.(6)** the introductory paragraph is deleted and paragraph **(i)** are deleted and replaced with the following:

   Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A or B resulting from a sudden and accidental discharge or overflow of water or steam from within a: Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

   Paragraph **2.c(7)** Is added:

   (7) Theft and any ensuing loss if the dwelling has been "vacant" for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered "vacant".

B. **Coverage C – Personal Property**

   The introductory paragraph is deleted and replaced with the following:

   We insure for sudden and accidental direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded in Section **I** – Exclusions.

   Paragraph **9.b.(1)** was deleted and replaced with the following:

   (1) Committed by any "insured"; any roomers, boarders, tenants or any person who regularly resides at the "insured location".

   The following paragraphs are added to **B.9.b.**:

   (5) Theft of any property from within a locked "motor vehicle" or while a "motor vehicle" was located in a secured building on the "insured location" unless there is physical signs of break in or damage to the "motor vehicle" or to the secured building on the "insured location".

**ALLIED HO3 SP LA 16.06**          Includes copyrighted material of ISO, with its permission.

**(6)** Theft of any property from within an unlocked "motor vehicle" unless the "motor vehicle" was located in a secured building on the "insured location".

**(7)** Theft and any ensuing loss if the dwelling has been "vacant" for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered "vacant".

Paragraph **12.b.(4)** is deleted and replaced with the following:

**(4)** Caused by any constant or repeated seepage or leakage of water or steam or the presence of condensation of humidity, moisture, or vapor, over a period of 14 or more days from within a plumbing, sprinkler system, or from within or around any household appliance, shower stall, shower tub, tub installation or other plumbing fixture, including their walls, ceiling, or floors.

**SECTION I – EXCLUSIONS**

**2. Earth Movement** is deleted in its entirety and replaced with the following:

**2. Earth Movement**
Earth Movement means the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to:
**a.** Earthquake including land shock waves or tremors before, during or after a volcanic eruption;
**b.** Landslide, mudslide, mudflow;
**c.** Subsidence or sinkhole;
**d.** Erosion and/or scouring;
**e.** Movement resulting from improper compaction, decay of buried or organic materials, site selection, site preparation;
**f.** Settling, cracking or expansion of foundation;
**g.** Soil movement resulting from blasting or demolition; mining;
**h.** Any earth movement caused, in whole or in part, by "Hydraulic Fracturing"
**i.** Any other earth movement including earth sinking, rising or shifting; cracking

This Exclusion **A.2.** applies regardless of whether any of the above, in **A.2.a**. through **A.2.i.** is caused by any act of nature or any man made event or is otherwise caused.

However, direct loss by fire, explosion or theft resulting from any of the above, in **A.2.a.** through **A.2.i.** is covered.

**3. Water** is deleted in its entirety and replaced with the following:

**3. Water**
This means:
**a.** Any flood, surface water, waves, including tidal wave, tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;
**b.** Water which:
**(1)** Backs up through sewers and/or drains; or
**(2)** Overflows or is otherwise discharged from a sump, sump pump, or related equipment or any other system designed for the removal of subsurface water which is drained from a foundation area of a structure;
**c.** Water below the surface of the ground, regardless of its source, including water which exerts pressure on or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, basement, swimming pool or other structure; or
**d.** Water-borne material carried or otherwise moved by **A.3.a** through **A.3.c**. of this Exclusion;

This exclusion **A.3.** applies regardless of whether any of the above, in **A.3.a.** through **A.3.d.** is caused by, or originating from, in whole or in part, by any act of nature, or any man made events, or both, or is otherwise caused.

This Exclusion **A.3.** applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, reservoir, water main, seawall, embankments or any other boundary or containment system.

However, direct loss by fire, explosion or theft resulting from any of the above, in **A.3.a.** through **A.3.d.** is covered.

**8. Intentional Loss** is deleted and replaced by the following:

**8. Intentional Loss**
Intentional Loss means any loss arising out of any act committed:
a. With respect to loss caused by fire:
**(1)** By or at the direction of the "insured"; and
**(2)** With the intent to cause a loss.

    b. With respect to loss caused by a peril other than fire and with respect to all "insureds" covered under this Policy:
       **(1)** By you or at your direction; and
       **(2)** With the intent to cause a loss.

The following exclusions are added:

**10. Criminal Or Illegal Activity**

We do not provide coverage for any loss because of or originating from, in whole or in part, by Criminal or Illegal Activity, meaning any and all criminal or illegal acts performed by or at the direction of any "insured" that result in damage to your structures or personal property. This exclusion applies regardless of whether or not any "insured" is charged with a crime.

**11. Diminished Value**

We do not cover any loss due to diminished value of any property covered under this policy.

**12. "Named Storm", Windstorm or Hail Loss** to:
    **a.** Awnings, canopies, greenhouses and their contents, trellises, pergolas, cabanas;
    **b.** Windmills, wind pumps, wind chargers or their towers;
    **c.** Row boats, canoes and kayaks located outside of an enclosed building;
    **d.** Any structure, including the personal property contained within or on the structure, located in whole or in part over water;
    **e.** Personal Property contained in a building unless direct force of wind or hail makes an opening in the roof or wall and rain, snow, sand or dust enters through this opening and causes damage.
    **f.** Any Personal Property not stored in an enclosed building;

**13. Existing Damage**
    **a.** Damages which occurred prior to policy inception regardless of whether such damages were apparent at the time of the inception of this policy or discovered at a later date; or
    **b.** Claims or damages arising out of workmanship, repairs or lack of repairs because of or originating from or in connection with damage which occurred prior to policy inception.

This exclusion does not apply in the event of a total loss caused by a Peril Insured Against.

**14. Temperature or Dampness**

We do not cover any loss caused by extremes of temperature, dampness or dryness of atmosphere, or water vapor or condensation, gradual deterioration, wet or dry rot, or warping not caused by a covered peril, to your Dwelling, Other Structures or Personal Property.

This exclusion does not apply to loss caused directly by rain, sleet, snow or hail.

**15. "Hydraulic Fracturing"**

We do not cover any loss caused or originating from, in whole or in part, by any "Hydraulic Fracturing", whether the "Hydraulic Fracturing" activity occurs on the "insured location" or another location.

**16. Constant and/or Repeated Seepage and/or Leakage**

We do not pay for any loss arising from, caused by, originating from or in connection with any constant or repeated seepage and/or leakage of water, steam, presence of and/or condensation of humidity, humidity, moisture, vapor, which occurs over a period 14 days or more, whether hidden or not and results in damage such as wet or dry rot, "fungi", "bacteria", deterioration, rust, decay or any other corrosion and/or any damage.

**17. "Fungi", Wet Or Dry Rot, Or Bacteria**

We do not cover any loss due to "fungi", wet or dry rot, or bacteria. This includes the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

**SECTION I - CONDITIONS**

**C. Duties After Loss** is deleted in its entirety and replaced with the following:

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

**1.** Give immediate notice to us;

**2.** Notify the police of loss by theft or vandalism or malicious mischief and:
    **a.** File a police report describing all items stolen and/or property damaged;
    **b.** Submit the filed report to us; and
    **c.** Cooperate with the police in their investigation;

**3.** Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages;

**4.** Protect the property from further damage. If repairs to the property are required, you must:

Page **6** of 14

**ALLIED HO3 SP LA 16.06**          Includes copyrighted material of ISO, with its permission.

a. Make reasonable and necessary repairs to protect the property; and
b. Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation and processing of a claim;

6. Prepare a written inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss for each item. Attach all bills, receipts and related documents that verify or support the information stated in the inventory;

7. As often as we reasonably require:
   a. Show the damaged property;
   b. Provide us with records and documents we request and permit us to make copies; and
   c. Provide to us or execute an authorization which allows us to obtain on your behalf, records and documentation we deem relevant to the investigation of your loss; and
   d. You, any "insured" and anyone you hire in connection with your claim under this policy must:
      (1) Submit to examinations under oath and recorded statements, while not in the presence of another "insured"; and sign the same;
      
      Representations made by any of the preceding persons who appear in the examinations under oath and/or recorded statements will be deemed to be your representations.

8. Send to us your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
   a. The time and cause of loss;
   b. The interests of all "insureds" and all others in the property involved and all liens on the property;
   c. Other insurance which may cover the loss;
   d. Changes in title or occupancy of the property during the term of the policy;
   e. Specifications of damaged buildings and detailed repair estimates;
   f. The inventory of damaged personal property described in **6.** above;
   g. Receipts for additional living expenses incurred; and
   h. Evidence or affidavit that supports a claim under **E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money** under **Section I – Property Coverages**, stating the amount and cause of loss.

This proof of loss must be sent to us within:
(1) 180 days after our request, if the loss results from a catastrophic event for which a state of disaster or emergency was declared pursuant to law by civil officials; however this 180 day period does not commence until the state of emergency or disaster has ended and you have access to your property; or
(2) 60 days after our request in all other cases.

9. Retain any and all damaged property for inspection by the Company.

10. Obtain Company approval before permanent repair or replacement of damaged property begins.

D. **Loss Settlement**
Paragraph **1.** is deleted and replaced with the following:

1. Property of the following types:
   a. Personal property;
   b. Awnings, carpeting, household appliances, window air conditioning units, outdoor antennas, above ground pools, and outdoor equipment, whether or not attached to buildings;
   c. Structures that are not buildings; and
   d. Grave markers, including mausoleums;
   e. Aluminum framed screened enclosures, pool cages, and aluminum framed carports when loss or damage is caused directly and/or indirectly, by any wind, windstorm, "Named Storm", Tornado or hail;
   f. Solar panels; solar power or water heating systems including solar panels, pipes supplying and returning water to solar panels, and equipment or devices controlling solar power or water heating systems when loss or damage is caused, directly and/or indirectly, by any wind, windstorm, "Named Storm" tornado or hail.
   g. Any structure defined as part of Coverage **B** – Other Structures unless the structure is constructed of the same or substantially the same material as that of the dwelling and is attached to a permanent concrete foundation when loss or damage occurs;

   at actual cash value at the time of loss but not more than the amount required to repair or replace.

Paragraph **2.a.(2)** is replaced by the following:
(2) The replacement cost of that part of the building damaged with material of like kind and quality; or

Paragraph **2.e.** is replaced by the following:

- **e.** You may disregard the replacement cost loss settlement provisions and make claim under this Policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **D.** Loss Settlement, provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged building. However, if the loss results from a catastrophic event for which a state of disaster or emergency was declared pursuant to law by civil officials, this 180-day period does not commence until the state of emergency or disaster has ended and you have access to your property.

Paragraph **F**. Appraisal is deleted and replaced with the following:

**E. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. Any outcome of the appraisal will not be binding on either party.

Each party will:

1. Pay its own appraiser; and
2. Bear the other expenses of the appraisal and umpire equally.

Paragraph **I. Our Option**, the following sentence was added:

We may also take all or part of the damaged property at the agreed or appraised value.

Paragraph **J. Loss Payment** is deleted and replaced by the following:

**J. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the Policy or is legally entitled to receive payment. The undisputed portion of the loss will be payable within 30 days after we receive your proof of loss.

Paragraph **L. Mortgage Clause** is deleted and replaced with the

**L. Mortgage Clause**

If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

1. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:
   - **a.** Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;
   - **b.** Pays any premium due under this policy on demand if you have neglected to pay the premium;
   - **c.** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs C. Duties After Loss, F. Appraisal, H. Suit Against Us and J. Loss Payment under Section I – Conditions also apply to the mortgagee.

2. If we pay the mortgagee for any loss and deny payment to you:
   - **a.** We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or
   - **b.** At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

3. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

4. If this Policy is cancelled, the mortgagee will be notified:
   - **a.** At least 10 days before the date cancellation takes effect if we cancel for nonpayment of premium; or
   - **b.** At least 30 days before the date cancellation takes effect if we cancel for any other reason.

   If the Policy is not renewed by us, the mortgagee will be notified at least 30 days before the date nonrenewal takes effect.

**ALLIED HO3 SP LA 16.06**          Includes copyrighted material of ISO, with its permission.

5. If the property described under Coverage **A** – Dwelling or Coverage **B** – Other Structures is foreclosed upon under the deed of trust, the mortgagee may cancel this Policy of insurance and will be entitled to any unearned premium from this Policy.

   The mortgagee must credit any unearned premium against any deficiency owed by the borrower and return any unearned premium not so credited to the borrower. The unearned premium will be figured using the customary pro rata procedures.

We provide coverage to no mortgagee or any of its representatives under this policy if, whether before or after a loss, a mortgagee or any of its representatives has:

1. Intentionally concealed or misrepresented any material fact or circumstance;
2. Engaged in fraudulent conduct; or
3. Made false statements;

relating to this insurance.

Paragraph **R.   Concealment Or Fraud** is replaced by the following:

R. **Concealment Or Fraud**

1. With respect to loss caused by fire, we do not provide coverage to the "insured" who, whether before or after a loss, has:
   a. Intentionally concealed or misrepresented any material fact or circumstance;
   b. Engaged in fraudulent conduct; or
   c. Made false statements;

   relating to this insurance.

2. With respect to loss caused by a peril other than fire and with respect to all "insureds" covered under this Policy, we provide no coverage for loss if, whether before or after a loss, one or more "insureds" have:
   a. Intentionally concealed or misrepresented any material fact or circumstance;
   b. Engaged in fraudulent conduct; or
   c. Made false statements;

   relating to this insurance.

3. However, if the conduct specified above is in relation to the procurement of the contract or occurs subsequent to the issuance of the contract, but if known to us would have caused us not to issue the Policy, coverage will only be denied if the conduct was committed with the intent to deceive.

The following condition is added:

T. **Assignment of Claim Benefits**

No assignment of claim benefits, regardless of whether made before a loss or after a loss, shall be valid without the written consent of all "insureds" mortgagees and all additional insureds named in this policy.

**SECTION II – LIABILITY COVERAGES**
**SECTION II – EXCLUSIONS**
A. **"Motor Vehicle Liability"**

Paragraphs **2.a and 2b.** are deleted and replaced with the following:
   a. In dead storage on an "insured location" at the time of the "occurrence";
   b. Not subject to motor vehicle registration and is used solely to service a residence;

Paragraph

E. **Coverage E – Personal Liability and Coverage F – Medical Payments to Others**

Coverages **E** and **F** do not apply to the following:

Paragraph **1. Expected Or Intended Injury** is deleted in its entirety and replaced by the following:

1. **Expected Or Intended Injury**

   "Bodily injury" or "property damage" with respect to loss:

   a. Caused by fire, which is expected or intended by the "insured", even if the "bodily injury" or "property damage":
      (1) Is of a different kind, quality or degree than initially expected or reasonably intended; or
      (2) Is sustained by a different person, entity or property than initially expected or reasonably intended.
      (3) The "insured" person lacks the mental capacity to govern his or her conduct;

      However, this Exclusion **E.1.a.** does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by the "insured" to protect persons or property.

   b. Caused by a peril other than fire and with respect to all "insureds" covered under this Policy, which is expected or intended by one or more "insureds", even if the "bodily injury" or "property damage":
      (1) Is of a different kind, quality or degree than initially expected or reasonably intended; or

    **(2)** Is sustained by a different person, entity or property than initially expected or reasonably intended.

    **(3)** The "insured" person lacks the mental capacity to govern his or her conduct.

  However, this Exclusion **E.1.b.** does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by one or more "insureds" to protect persons or property.

Paragraph **2. "Business",** paragraph **a.** is deleted and replaced with the following:

**2. "Business"**
"Bodily injury" and/or "property damage" arising out of or in connection with, in whole or in part, from:
  **a.** any "business" conducted from an "insured location" or engaged in by any "insured", whether or not the "business" is owned or operated by any "insured" or employs any "insured".
  **b.** The rental or holding for rental of any part of the "insured location", regardless of the total annual compensation.

This Exclusion E.2. applies but is not limited to any act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

However, this exclusion does not apply to:
  **a.** the rental or holding for rental of one (1) other structure on the "insured location" for use as a private residence, if disclosed on the application and endorsement ALLIED HO SRTO is included with the policy.

Paragraph **3. Professional Services** is deleted and replaced with the following:

**3. Professional Services**
"Bodily injury" or "property damage" caused by or originating from, in whole or in part, by the rendering of or failure to render professional services.

Paragraph **4. "Insured's" Premises Not An "Insured Location"**
The introductory paragraph is deleted and replaced with the following:

"Bodily injury" or "property damage" arising out of or originating from a premises:

Paragraph **6. Communicable Disease** is deleted and replaced by the following:

**6. Communicable Disease**
"Bodily injury" or "property damage" because of or originating from or in connection with the transmission of any communicable disease by any "insured".

Paragraph **7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse** is deleted and replaced by the following:

**7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**
"Bodily injury" or "property damage" because of or originating from or in connection with sexual molestation, corporal punishment or physical or mental abuse. This exclusion applies but is not limited to any act or omission, regardless of:
  a. Its nature or circumstance; or
  b. whether an "occurrence" takes place on an "insured location" or any other location.
  c. The number of "insureds"; or
  d. The number of persons injured; or
  e. The number of claims made.

Paragraph **8. Controlled Substance** is deleted and replaced by the following:

**8. Controlled Substance**
"Bodily injury" or "property damage" originating from or caused by, in whole or in part, the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by federal law. Controlled Substances include but are not limited to cocaine, LSD, marijuana, and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed health care professional.

The following exclusions are added:
**9. Trampoline, Skateboard Or Bicycle Ramp**
"Bodily injury" or "property damage" originating from or caused by, in whole or in part, the ownership, maintenance, supervision or use of any trampoline or skateboard or bicycle ramp, or all the aforementioned, owned by, rented by, or loaned to, or otherwise under the care, custody and control of any "insured", or that of your employee, agent, visitor or tenant, whether on the "residence premises" or any other location.

**10. Recreational Off Road Vehicles**
"Bodily Injury" or "property damage" originating from or caused by, in whole or in part:
  **a.** The use, supervision, care, custody or control of any "insured", or that of your

Page **10** of 14

**ALLIED HO3 SP LA 16.06**    Includes copyrighted material of ISO, with its permission.

employee, agent, visitor or tenant, of a recreational off road or unlicensed vehicle, including but not limited to ATV's, 3-wheelers, 4-wheelers, dune buggies, rock climbers, go-carts, mini-bikes, dirt bikes, snowmobiles, motorized skateboards, motorized bicycles, and motorized scooters;

**b.** Whether owned or not owned by any "insured"; and

**c.** Whether or not the injury or damage occurs on the "insured location" or any other location.

**11. Diving Boards Or Pool Slides**

"Bodily injury" or "property damage" caused by or originating from, in whole or in part, with the ownership, maintenance, supervision, or use of any diving board or pool slide owned by, rented by, or loaned to, or otherwise under the care, custody and control of any "insured", or that of your employee, agent, visitor or tenant, whether on the "residence premises" or any other location.

**12. Animals**

"Bodily injury" or "Property Damage" caused by or originating from or in connection with, in whole or in part, any animal owned or kept by any "insured", or in the care, custody or control of any 'insured", or that of your employee, agent, visitor or tenant whether or not the injury or damage occurs on the "residence premises", on the "residence premises" with your or any "insured's" permission, or any other location.

**13. "Electronic Aggression"**

"Bodily Injury" or "Property Damage" caused by or originating from, in whole or in part, by any "Electronic Aggression".

**14. Fuel Systems**

"Bodily Injury" or "Property Damage" arising out of, originating from or caused by, in whole or in part, the escape or release of liquid fuel from a "fuel system". This exclusion applies, but is not limited to:

**a.** Any supervision, instructions, recommendations, warnings or advice given in connection the above;

**b.** Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such "bodily injury" or "property damage", damages, loss, cost or expense; or

**c.** Any request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of liquid fuel.

However this exclusion does not apply to "bodily injury" or "property damage" arising out of fire or explosion resulting from such escaped or released liquid fuel.

**15. Criminal or Illegal Activity**

"Bodily Injury" or "Property Damage caused by or originating from or in connection with any criminal or illegal activity. This exclusion applies whether or not any "insured" is convicted of a crime.

**16. "Hydraulic Fracturing"**

"Bodily Injury" or "Property Damage" caused by or originating from, in whole or in part, by any "hydraulic fracturing".

**17. "Personal Watercraft"**

"Bodily Injury" or "Property Damage" arising from, originating from, caused in whole or in part, by the ownership, maintenance, supervision, or use of any "personal watercraft" owned by, rented by, loaned to, or otherwise under the care, custody and control of any "insured" or that of your employee, agent, visitor or tenant, whether on the "residence premises" or any other location.

**18. "Fungi", Wet or Dry Rot, Or "Bacteria"**

"Bodily Injury" or "Property Damage" arising directly or indirectly from, originating from or caused in whole or in part, by any "fungi", wet or dry rot, or "bacteria".

**F. Coverage E – Personal Liability**

Paragraph **2.** Is deleted and replaced by the following:

**2.** "Property damage" to property owned by any "insured" or any resident of the "insured location". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

Paragraph 6. The introductory paragraph Is deleted and replaced with the following:

**6.** "Bodily injury" to you or any "insured" as defined under Definition **5.a.** or **b.**

The following paragraph was added:

7. This policy does not provide any coverage for punitive or exemplary damages, fines or penalties in any amount regardless of how they are imposed.  This exclusion includes, but is not limited to, those imposed by civil fine or penalty assessed or imposed under any code, statute, regulation or court order.  This policy also does not provide any coverage for the cost of defense, including but not limited to attorney fees or costs, related to any such damages, fines or penalties.

The following paragraph is added to **E**.

All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions during the term of this policy or any renewal thereof, shall be considered to be the result of one "occurrence" regardless of:
1. It's nature or circumstance'
2. Whether an "occurrence" takes place on an "insured location" or any other location;
3. Number of "insureds"; or
4. Number of persons injured; or
5. Number of claims made.

## SECTION II – CONDTIONS

A. **Limit of Liability 1.** is deleted and replaced with the following:

A. **Limit of Liability**

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** Limit Of Liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions during the term of this policy or any renewal thereafter, shall be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** Limit Of Liability shown in the Declarations.

C. **Duties After "Occurrence"**
The following paragraph is added:

7. Allow us to inspect the property wherein the "bodily injury" or "property damage" occurred.

F. **Suit Against Us** has been deleted in its entirety and replaced with the following:

F. **Suit Against Us**

A person or organization may bring a suit against us including, but not limited to a suit to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of the Coverage Part or that are in excess of the applicable limit of insurance.  An agreed settlement means a settlement and release of liability signed by us, the "insured" and the claimant or the claimant's legal representative.

J. **Concealment or Fraud**  is deleted in its entirety and replaced with the following:

J. **Concealment or Fraud**

1. We do not provide coverage to any "insured" who, whether before or after a loss, has:
   a. Intentionally concealed or misrepresented any material fact or circumstance;
   b. Engaged in fraudulent conduct; or
   c. Made false statements;
   relating to this insurance.

2. However, if the conduct specified above is in relation to the procurement of the contract or occurs subsequent to the issuance of the contract, but if known to us would have caused us not to issue the Policy, coverage will only be denied if the conduct was committed with the intent to deceive.

The following conditions are added:

K. **Notice Of Offer To Settle Or Of Settlement Of Claim**

1. We will notify you in writing of any initial offer to settle a claim against you under this Section **II.** We will give you notice within 10 days after the date the offer is made.

2. We will notify you in writing of any settlement of a claim against you under this Section **II.** We will give you notice within 30 days after the date of the settlement.

L. **Venue:** Choice of Law:  This policy shall be construed, interpreted and enforced according to the laws of the State of Louisiana.  All actions or proceedings because of or originating from or related to, this policy shall only be brought in a court of competent jurisdiction in Louisiana.

## SECTIONS I AND II – CONDITIONS

Paragraphs **2.**, **3.** and **4.** of **C. Cancellation** are replaced by the following:

2. The following applies with respect to premium payments due on new and renewal policies, including installment payments:

Page **12** of 14

**ALLIED HO3 SP LA 16.06**          Includes copyrighted material of ISO, with its permission.

  a. If your premium payment check or other negotiable instrument is returned to us or our agent or a premium finance company because it is uncollectible for any reason, we may cancel the Policy subject to Paragraphs **b.** and **c.** below.
  b. We may cancel the Policy effective from the date the premium payment was due, by sending you written notice by certified mail, or by delivering such notice to you within 10 days of the date that we receive notice of the returned check or negotiable instrument.
  c. The cancellation notice will also advise you that the Policy will be reinstated effective from the date the premium payment was due if you present to us a cashier's check or money order for the full amount of the returned check or other negotiable instrument within 10 days of the date that the cancellation notice was mailed.
3. The following applies if **2.** above does not apply:

   We may cancel this Policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

   Proof of mailing will be sufficient proof of notice.
   a. When you have not paid the premium, regardless of the period of time this Policy has been in effect, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.
   b. When this Policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you and any other known person shown by the Policy to have an interest in any loss which may occur thereunder know at least 30 days before the date cancellation takes effect.
   c. When this Policy has been in effect for 60 days or more, or at any time if it is a renewal with us except as provided in Item **3.e.** below, we may cancel:
      (1) If there has been a material misrepresentation of fact with the intent to deceive:
         (a) In the procurement of the contract; or
         (b) At any other time since the Policy was issued;

         which if known to us would have caused us not to issue the Policy; or
      (2) If the risk has changed substantially since the Policy was issued.

      This can be done by letting you and any other known person shown by the Policy to have an interest in any loss which may occur thereunder know at least 30 days before the date cancellation takes effect.
   d. When this Policy is written for a period of:
      (1) More than one year; or
      (2) Three years or less;

      we may cancel for any reason at anniversary by letting you and any other known person shown by the Policy to have an interest in any loss which may occur thereunder know at least 30 days before the date cancellation takes effect.
   e. When this Policy has been in effect and renewed for more than three years, we may cancel for any one of the following reasons:
      (1) If you have committed fraud with the intent to deceive:
         (a) In the procurement of the contract; or
         (b) At any other time since the Policy was issued;
      (2) If the insured risk has undergone a material change;
      (3) If you have filed two or more claims that are not the result of an incident which is:
         (a) Due directly to forces of nature; and
         (b) Exclusively without human intervention;

         within a continuous three-year period within the five years preceding the current policy renewal date; or
      (4) If the continuation of this Policy endangers our solvency.

      This can be done by letting you and any other known person shown by the Policy to have an interest in any loss which may occur thereunder know at least 30 days before the date cancellation takes effect.

   We will not, however, cancel this Policy, regardless of the period of time this Policy has been in effect, based solely upon a loss caused by an Act of God. An Act of God means an incident due directly to natural causes and exclusively without human intervention.
4. If this Policy is cancelled, we will return any premium refund due, subject to Paragraphs **a., b.** and **c.** below. The cancellation will be effective even if we have not made or offered a refund.

    a. If you cancel this Policy, we will refund the return premium, if any, within 30 days after the date cancellation takes effect. The return premium shall be computed on a pro rata basis, subject to the minimum premium requirements.

    b. If we cancel this Policy, and the return premium is not refunded with the notice of cancellation, we will refund it within a reasonable time after the date cancellation takes effect. We will send the refund to you, or your agent, unless **c.** below applies. If the premium is refunded to your agent, we will notify you, at the time of cancellation, that a return of unearned premium may be generated by the cancellation.

Paragraph **D. Nonrenewal** is replaced by the following:

**D. Nonrenewal**

  **1.** We may elect not to renew this Policy, subject to the provisions of Paragraphs **2.** and **3.** below. We may do so by delivering to you and any other known person shown by the Policy to have an interest in any loss which may occur thereunder, or mailing to you at your mailing address shown in the Declarations and to any other known person shown by the Policy to have an interest in any loss which may occur thereunder, written notice at least 30 days before the expiration date of this Policy. Proof of mailing will be sufficient proof of notice.

  **2.** If this Policy has been in effect and renewed with us for more than three years, we will not exercise our right of nonrenewal except:

    **a.** When you have not paid the premium;

    **b.** If you have committed fraud;

    **c.** If the insured risk has undergone a substantial change;

    **d.** If you have filed two or more claims that are not the result of an incident which is:

      **(1)** Due directly to forces of nature; and

      **(2)** Exclusively without human intervention;

      within a continuous three-year period of time within the five years preceding the current policy renewal date; or

    **e.** If the continuation of this Policy endangers our solvency.

  **3.** We will not, however, exercise our right of nonrenewal, regardless of the period of time this Policy has been in effect with us, based solely upon a loss caused by an Act of God. An Act of God means an incident due directly to natural causes and exclusively without human intervention.

The following Conditions are added:

**H. Our Right to Recover Payment**
If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. That person shall do:

  **1.** Whatever is necessary to enable us to exercise our rights; and

  **2.** Nothing after the loss to prejudice them.

Our right to recover is subordinate to the "insured's" right to be fully compensated.

**I. Venue**: Choice of Law: This policy shall be construed, interpreted and enforced according to the laws of the State of Louisiana. All actions or proceedings because of or originating from, or related to, this policy shall only be brought in a court of competent jurisdiction in Louisiana.

**J. Our Right To Recompute Premium**
We established the premium for this policy based on the statements you made in the application for insurance. We have the right to recompute the premium if we later obtain information which affects the premium charged.

All other provisions of this Policy apply.

**ALLIED HO3 SP LA 16.06**    Includes copyrighted material of ISO, with its permission.